## No. 15,806.

REED *v.* BLAKLEY ET AL., CITY COUNCILMEN OF DENVER.

(176 P. [2d] 681)

Decided December 31, 1946.   Rehearing denied January 14, 1947.

Mr. GEORGE T. EVANS, for petitioner.

Mr. MALCOLM LINDSEY, Mr. HAROLD B. NEWROCK, for respondents.

Mr. FRANK L. HAYS, Mr. KENNETH W. ROBINSON, amici curiae.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court,

An original proceeding by one Reed, called petitioner, against the city council (the individual members being named) of the City and County of Denver, called respondents, seeking a writ to require them to act on his application for a license to sell liquors in Denver, in relation to which, as said, "respondents refused to act upon the * * * ground that they had no lawful power to do so." We granted an alternative writ. Whether authority to issue liquor licenses in the City and County of Denver is vested in the city council, as petitioner claims, or in the manager of safety and excise of Denver, as respondents maintain, is the over-all question.

The matter was presented in briefs and orally argued by Mr. Evans for petitioner, and by Mr. Lindsey (Mr. Newrock on the brief), city attorney, for respondents. Mr. Hays, appearing amicus curiae, also filed a brief and took part in the oral presentation. The case stood submitted, but before an opinion could be prepared there was a change in the personnel of the court. In consideration thereof, and the further fact that the question involved is of public importance, we set the case for further oral argument. At the appointed time, and before the argument was begun, Mr. Robinson exhibited a letter from a majority of the city council, addressed to him, which, while disdaining to deny that their entire membership had voted that they lacked authority to act on petitioner's application for a license, was to the effect that now they believe they have such power. Hence, as was further intimated, the City Attorney, while heretofore properly representing their declared attitude, is not in harmony with their present view, and, therefore, they wished to have Mr. Robinson represent them. Considering the about-face of respondents, in form at least, as well as the premises generally, whether we should permit Mr. Robinson to have part in the argument, and, if so, in what relation (no precedents being at hand), was not immediately clear. In the midst of the dilemma, Mr. Evans offered to yield a portion of his time to Mr.

Robinson. In the interest of making determination of the question, highly desirable, as may not be gainsaid, and not ignoring the value of expedition, we concluded to proceed with the matter, hear Mr. Robinson, and, acting after the event, to designate his place in the history of the case. The argument then proceeded. Mr. Evans and Mr. Lindsey, following the general course of their earlier appearance, and in the light of evident greater research, re-emphasized their positions. Mr. Hays gave the court the benefit of his restudy of the problem, and Mr. Robinson, although new to the litigation, manifested understanding of the issues and contributed to the learning involved in the controversy. Fairly, as we should say, the arguments were searching, exhaustive, clarifying. Mr. Robinson's relationship to the case, as we conclude is fitting, as well as that of other counsel who appeared, is noted on the title page.

Petitioner rests his claim on section 23, chapter 89, '35 C.S.A. (Liquor Code 1935), which, so far as necessary for consideration, reads: "Where the license fee is to be paid into the treasury of any city, town or city and county [as here], the licenses in this article provided for shall be issued by the council in a city and county, and by the council, board of trustees or licensing authority in any other city or town, where the license fee is to be paid into the treasury of a county, the licenses provided for in this article shall be issued by the board of county commissioners of such county." The statute alone considered, petitioner's footing seems secure. But respondents urge upon our attention section 2, article XX, Colorado Constitution, and section 127, Denver City Charter, adopted by authority of said constitutional provision, in the light whereof, as said, the statute in question is inoperative and void. The section of the Constitution of respondents' reliance reads: "The officers of the city and county of Denver shall be such as by appointment or election may be provided for by the charter; and the jurisdiction, term of office, duties and qualifications of

all such officers shall be such as in the charter may be provided; but every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable. If any officer of said city and county of Denver shall receive any compensation whatever, he or she shall receive the same as a stated salary, the amount of which shall be fixed by the charter, and paid out of the treasury of the city and county of Denver in equal monthly payments." Section 127 (1927 Compilation) of the Denver charter reads: "(Section 6) There shall be, and hereby is, created a department of safety and excise, which shall have full charge and control of the departments of fire and police, heretofore under the control of the commissioner of safety; and which shall also have control of the department of excise, heretofore under the control of the commissioner of finance, with full power to grant, renew, suspend during investigation, and revoke after notice and hearing thereon, all licenses, and in addition thereto, shall exercise the powers and perform the duties now required, or that may hereafter be required, by the constitution, or the general laws of the state, to be exercised by the sheriff.

"The manager of safety and excise shall be the officer in full charge and control of said department, and shall devote his entire time to the duties of his office."

Clearly, the constitutional and charter provisions considered, the City and County of Denver has created the office of manager of safety and excise, and designated the incumbent of that office as its exclusive licensing agent. In doing so, Did the constitutionally created public entity known as the City and County of Denver, transcend, or proceed other than in accordance with, the Constitution? We are persuaded that the question in its entirety, as well as its every angle, has been amply stated, learnedly discussed, and comprehensively resolved in an opinion by the late Justice Morton S. Bailey,

speaking for the court in *People ex rel. v. Cassiday,* 50 Colo. 503, 117 Pac. 357. We opened the discussion there by reference to *People ex rel. v. Johnson,* 34 Colo. 143, 86 Pac. 233 (formally disapproved), saying: "That case was determined upon the broad proposition that the people of the whole state could not amend their constitution so as to permit the people of the consolidated body known as the city and county of Denver, by their charter, to name agencies, other than those already provided by the constitution and general laws, to discharge, within that territory, governmental duties relating to state and county affairs. We therefore direct our attention to a consideration of the application exclusively along these lines." After stating that interpretation of section 2, article XX, of the Constitution, was our chief concern, we continued as follows: "Let it first be fully apprehended, a thing which seems to have escaped the attention of a majority of the court in the Johnson case, that article XX, as written is part of the constitution of the state, the same as any other of its provisions, and is as much in force as any part of the original constitution itself. It is not only a part of the constitution, but it is there to stay, until the authority which voted it in shall vote it out. It, as any other part of the constitution, is to be given force and effect according to its plain intent, purpose and meaning. When the whole people speak through a fundamental law, or by amendment thereto, not in conflict with the federal constitution, all should hear and heed, more especially the courts, whose function is to interpret, and, where possible, uphold and enforce, not nullify, overthrow and destroy the law. It is not too much to say that, had article XX been written in the original constitution, no one would ever have had the temerity to question the propriety of its provisions and their effectiveness. This article must now be considered, treated and construed as if thus originally written therein.

"Section 3 of the article, by express provision, ter-

minated, upon its adoption, the terms of office of all officers of the then city of Denver, of the included municipalities and of the old county of Arapahoe, a portion of which, together with the city of Denver and included municipalities, were then merged into the consolidated municipality of the city and county of Denver. It in effect did away with all county officers and offices, purely as such, in the consolidated territory, and provided a single set of officers or agencies to perform, in the new municipality, all duties of a local nature and all duties pertaining to governmental, state and county affairs as well. The conclusion is irresistable that, since the adoption of that article, and the formation of the city and county of Denver, there has never been, within that territory, a county office or county officer, as such, except only to the extent that this situation may have been affected by the decisions in the Johnson and other so-called county officers' cases.

"Keeping in mind, then, that, within the territory comprising the city and county of Denver, no county office, or county officer, as in other counties of the state, exists, we come to a consideration of the meaning and purpose of that portion of section 2 of article XX, which reads: 'The officers of the city and county of Denver shall be such as by appointment or election may be provided for by the charter; and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided; but every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable.'

"There is no element of uncertainty about this provision. It needs no construction; it interprets itself. The question is, shall it be given its plain, obvious and common-sense meaning, and enforced accordingly, as other provisions of the constitution are interpreted and enforced? There is no apparent reason for doing other-

wise. Why scrutinize article XX in hostile spirit or treat it as an interloper? It is a child of the same parentage as the original constitution. This court has again and again held it to be a part thereof, and it is so in all its provisions, and for all purposes, according to its clear intent.

"This section does not imply that there is no county or county government within that territory; there is therein a county and a county government, just as both exist in other portions of the state. Section 2 not only does not, in fact, set aside governmental duties and functions as to state and county affairs in this territory, it does not even pretend to do so, and by no stretch of the imagination can it be fairly held to do so. Neither is there any other provision of article XX which does it. These duties are fixed, absolutely fixed, until changed by the same power which created them. Section 2 expressly recognizes that such duties are in existence and must be discharged, and forthwith proceeds to provide and declare by whom they shall be performed. The whole people of the state have declared, by their fundamental law that this may be done. That was a question of governmental policy for the people to determine, and this policy, when once declared, may not be ruthlessly set aside by the courts, except it is shown to violate in some way the federal compact with the state. * * * All that article XX purports to do relative to county offices is to provide that the people of the city and county of Denver, through their charter, shall designate the agencies, which are to discharge the respective duties and functions which pertain to them. There is no warrant or authority in article XX to the people of the city and county of Denver to alter, change or dispense with such acts and duties. They remain, as before, subject to the constitution and general laws, and are exclusively under the control of the legislature. The people of the city and county of Denver have not been given, and do not have, the power by charter to in any way change

the duties of governmental officers, so far as they relate to state and county affairs, and there can be no ground for such contention if article XX be properly read and understood. The city and county of Denver has not been freed from the constitution. It is as much subject to it as any other part of the state. Article XX is a part of the constitution. Upon its adoption certain portions of the constitution, as it theretofore existed, became inapplicable to this particular territory, because of the express provision of the new article. This article, to the extent which it undertook to do so, being the last expression of the people upon the subject, modified the constitution so far as it applied to the territory in question, and certain provisions thereof became inapplicable therein. Article XX is a grant of power to the people of the city and county of Denver, where theretofore no power in that respect existed, to do certain specific things, relative to the designation of agencies to discharge in that territory governmental duties fixed by the constitution and general laws. They have just such power and authority in this behalf as the article gives them, no more, no less.

"So that, the opinion of this court in the Johnson case notwithstanding, the sole question is whether the authority given by article XX to the people of the city and county of Denver to name the agencies by which governmental functions in that territory are to be discharged is subversive of state government and unrepublican in form? To merely ask the question, in the face of the facts as they are known and conceded to be, is to answer it. How, possibly, can the fact that different agencies than those provided for other counties of the state are in this territory to perform governmental duties, when all such functions are carefully preserved and their discharge provided for, be held in any manner to affect state government? What federal inhibition is invaded because the officers so designated may be chosen in the early spring-time rather than in the au-

tumn, that they serve for four years rather than two, that they are designated by one official title instead of another, or that one set of officers is named to discharge the duties in that territory pertaining to both local and governmental affairs, since all such governmental acts and duties are retained intact therein and are to be fully performed? * * * It is urged, in the opinion in the Johnson case, that if power to legislate in one particular respecting state and county governmental matters, within the consolidated district, may lawfully be given to the people thereof, then it is equally lawful to do the like in respect to all matters. This contention is upheld by neither reason, logic, nor judicial construction. The complete answer to it is that the people of the state have plenary power, by constitutional amendment, to provide just such methods of government for the state, or any portion of the state, as they please, so long as there is no violation of the federal compact. It is clear that the warrant of authority, given to the people of the city and county of Denver to merely designate the agency by which governmental duties therein shall be discharged, is not obnoxious to any provision of the enabling act or of the federal constitution, and therefore it may be, and has been, lawfully done."

In clearness of statement, cogency or reasoning, and definiteness of determination, the Cassiday case leaves nothing to be desired. Of the cases cited, and we have examined all of them, only that case, as we think, may be regarded as in point. Applying it to the problem here, we conclude the General Assembly properly has required the City and County of Denver to discharge the duty of receiving, considering, and acting upon applications submitted by those seeking licenses to dispense liquors within its territory, as contemplated in the Liquor Code of 1935; but, the doctrine of the case still respected, the agency through which that public entity shall perform and discharge such assigned duty is within the city and county's keeping, that is to say, through

appropriate charter enactment. It follows, that since Denver, proceeding so, as we have seen, has created an office or agency called manager of safety and excise, to the occupant of which it has assigned all licensing authority, only that official, and not the city council, has authority to act upon applications of the nature of the one here under consideration, and issue, or refuse to grant, licenses for the sale of intoxicating liquors in the City and County of Denver.

Moreover, we are disposed to the view that perforce another provision of the Constitution, although not cited or argued, the statutory section involved, in so far as it applies to the City and County of Denver, already quoted, is void. "The general assembly," reads the Constitution, "shall not pass local or special laws in any of the following enumerated cases [an exhaustive list]," and "where a general law can be made applicable, no special law shall be enacted." Art. V, §25, Const. Yet, and not withstanding that constitutional inhibition, the statute, to requote a portion of it, some words of which we italicize, reads: "Where the license fee is to be paid into the treasury of any city, town or city and county, the licenses in this article provided for shall be issued by the council in a city and county, and by the council, board of trustees *or licensing authority in any other city or town.*" In short although at the beginning, and hitherto, the City and County of Denver has had a functioning licensing authority, by and through which it has acted in matters of the nature here, the statute, proceeding specially in relation to that city, deprives it of a major privilege that all other cities, and even towns, may enjoy in virtue of a general provision of the act.

A fortifying consideration, as we think, is, that, through the more than a decade since the act of 1935 became effective, the manager of safety and excise, proceeding in virtue of the Constitution, and notwithstanding the statute, has functioned as the sole licensing authority of the City and County of Denver.

Let the alternative writ be discharged.

MR. CHIEF JUSTICE KNOUS, MR. JUSTICE JACKSON and MR. JUSTICE STONE dissent.